[No. 33427-9-III.   Division Three.   December 13, 2016.]

THE STATE OF WASHINGTON, *Respondent*, v. JUSTIN DEAN VANHOLLEBEKE, *Appellant*.

*Andrea Burkhart* (of *Burkhart & Burkhart PLLC*), for appellant.

*Randy J. Flyckt*, *Prosecuting Attorney*, and *Felicity A.M. Chamberlain*, *Deputy*, for respondent.

¶1 LAWRENCE-BERREY, J. — Justin Vanhollebeke appeals his conviction for first degree unlawful possession of a firearm. He argues (1) the warrantless search of the borrowed truck he was driving was unconstitutional because he refused to consent to the search, (2) the officers exceeded the lawful scope and purpose of the *Terry*[1] stop, (3) he did not knowingly and voluntarily waive his *Miranda*[2] rights, (4) the trial court abused its discretion when it declined to give his proposed missing witness instruction, (5) insufficient evidence supports the sentencing court's finding that he had the ability to pay legal financial obligations, and (6) the State failed to prove his offender score by a preponderance of the evidence. In his statement of additional grounds for review, he argues the dash camera videos from the officers' patrol cars should have been introduced at trial and the trial court did not allow defense counsel to investigate or present his case.

¶2 In the published portion of this opinion, we hold that a vehicle owner's consent to search overrides the borrower's express objection. In the unpublished portion of this opinion, we agree the State failed to prove Mr. Vanhollebeke's offender score by a preponderance of the evidence but disagree with his remaining arguments. Accordingly, we affirm Mr. Vanhollebeke's conviction but remand for a new sentencing hearing.

## FACTS

¶3 On the night of November 10, 2014, Sergeant Aaron Garza was on patrol when he noticed a truck that was facing the wrong way on a one-way street. At 11:23 p.m., Sergeant Garza pulled the truck over. As Sergeant Garza was giving the truck's description and license plate number to dispatch, Mr. Vanhollebeke stepped out of the driver's

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

side door. Sergeant Garza ordered Mr. Vanhollebeke to get back in the truck and then called for backup. Mr. Vanhollebeke got back in the truck.

¶4 Sergeant Garza got out of his patrol car and approached the truck. Mr. Vanhollebeke got out of the truck again and started walking toward Sergeant Garza. Sergeant Garza again ordered Mr. Vanhollebeke to get back in the truck. Mr. Vanhollebeke then said he had locked himself out of the truck. This unusual behavior made Sergeant Garza suspicious.

¶5 Sergeant Garza talked with Mr. Vanhollebeke near the side of the truck. At this point, Deputy Darryl Barnes and Officer Adam Lattin arrived. Mr. Vanhollebeke told Sergeant Garza he did not have a license or identification, but gave his name and date of birth. The other officers stayed with Mr. Vanhollebeke at the side of the truck while Sergeant Garza gave Mr. Vanhollebeke's information to dispatch.

¶6 Dispatch advised that Mr. Vanhollebeke's license was suspended. Dispatch also advised that Mr. Vanhollebeke was not the registered owner of the truck, and that the truck belonged to a man named Bill Casteel. This was around 15 to 20 minutes after Sergeant Garza initially stopped Mr. Vanhollebeke. Sergeant Garza's plan at this point was to cite Mr. Vanhollebeke for driving with a suspended license and then release him.

¶7 Sergeant Garza went to his car and began writing Mr. Vanhollebeke a citation, with dispatch providing him Mr. Vanhollebeke's information. This made the process take longer than usual. While Sergeant Garza was writing the citation, Deputy Barnes did a cursory safety sweep of the truck. He noticed a glass pipe with a white crystal substance on it, which he believed was drug paraphernalia, sitting in plain view near the dashboard. Deputy Barnes also noticed the truck's steering column was "punched,"

which indicated the truck was stolen.[3] Report of Proceedings at 106.

¶8 Deputy Barnes went to Sergeant Garza's car and told him about the pipe and the punched ignition. In light of this information, Sergeant Garza believed Mr. Vanhollebeke may have committed a possession of a controlled substance offense as well as a vehicle theft offense. He believed these new offenses took priority over the driving while suspended citation. Because of these suspicions, Sergeant Garza decided not to let Mr. Vanhollebeke go.

¶9 The officers asked for permission to search the truck. Mr. Vanhollebeke refused. Sergeant Garza attempted to contact Mr. Casteel on the telephone but was unsuccessful. Because the officers had Mr. Casteel's address, Deputy Barnes volunteered to drive to Mr. Casteel's home, which was between 18 and 25 miles away. Deputy Barnes drove straight there and arrived around 12:14 a.m. Mr. Casteel told Deputy Barnes that Mr. Vanhollebeke had permission to use the truck. Mr. Casteel gave permission to search his truck and gave Deputy Barnes a key to it.

¶10 Deputy Barnes returned directly to the scene and arrived around 12:30 or 12:40 a.m. He gave Sergeant Garza the key and advised that Mr. Casteel gave the officers permission to search the truck. Sergeant Garza used the key to open the truck and began to search it. He looked under the driver's seat and saw a revolver. The glass pipe tested positive for methamphetamine. The officers confirmed through dispatch that Mr. Vanhollebeke had a prior felony conviction.

¶11 The State charged Mr. Vanhollebeke with first degree unlawful possession of a firearm. Mr. Vanhollebeke moved to suppress the physical evidence on the grounds that he had refused to give the officers consent to search the truck and also that the stop's length and scope were

---

[3] A "punched ignition" is one in which the ignition system has been dismantled or removed, so that a key is no longer used to start the vehicle.

unreasonable. The trial court found that the physical evidence was admissible and denied Mr. Vanhollebeke's motion.

¶12 The jury convicted Mr. Vanhollebeke. Mr. Vanhollebeke appeals.

## ANALYSIS

¶13 Mr. Vanhollebeke argues the search of the truck was unconstitutional because he had legitimate coauthority over the truck and he objected to the search. This court reviews constitutional issues de novo. *State v. Budd*, 185 Wn.2d 566, 571, 374 P.3d 137 (2016).

¶14 The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures. Warrantless searches are generally illegal unless they fall within one of the exceptions to the warrant requirement. *State v. Cantrell*, 124 Wn.2d 183, 187, 875 P.2d 1208 (1994). One exception is consent to search by a person with authority over the place or thing to be searched. *Id.* This exception includes consent given by a third person, other than the defendant. *Id.* at 188.

¶15 To grant valid consent, the third party must have common authority over the place or thing to be searched. *Id.* Common authority does not mean that the third party has a mere property interest in the place or thing being searched. *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Rather, "[t]o establish lawful consent by virtue of common authority: (1) 'a consenting party must be able to permit the search in his own right' and (2) 'it must be reasonable to find that the defendant has assumed the risk that a co-occupant might permit a search.'" *State v. Thompson*, 151 Wn.2d 793, 804, 92 P.3d 228 (2004) (quoting *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984)).

¶16 Our Supreme Court addressed a somewhat similar situation in *Cantrell*. In that case, Rudell Cantrell and his

friend Ingo Schweitzer were driving in a car that Mr. Schweitzer's parents owned. *Cantrell*, 124 Wn.2d at 185. A state trooper stopped them for speeding and then asked if they had any contraband in the vehicle. *Id.* Knowing that Mr. Schweitzer's parents owned the vehicle, the trooper asked Mr. Schweitzer for permission to search his parents' car. *Id.* Mr. Schweitzer read and signed a consent form allowing the trooper to search the car. *Id.* at 186. The trooper did not ask Mr. Cantrell to sign a similar form. *Id.* Mr. Cantrell did not object when the trooper searched the car. *Id.* The trooper found marijuana, drug paraphernalia, and methamphetamine. *Id.* Mr. Cantrell was convicted. *Id.*

¶17 On appeal, the *Cantrell* court considered whether the police must obtain affirmative consent from all occupants who have approximately equal control over a vehicle before searching it without a warrant. *Id.* at 187. The court had previously held that the police must obtain affirmative consent from all cohabitants in an office building before searching the office without a warrant. *Id.* at 189 (quoting *State v. Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989)). The main question in *Cantrell* was whether that prior holding should be extended to automobile searches. *Id.*

¶18 The *Cantrell* court held that the Fourth Amendment does not require all occupants of a vehicle to independently consent to a search and that the consent of one who possesses common authority over a vehicle is sufficient. *Id.* at 192. The court reasoned that third party consent cases turn on the suspect's reasonable expectation of privacy, and if the suspect has willingly allowed another person common authority over the place or thing, then he or she runs the risk that the third party will expose it to another person. *Id.* at 189. The court recognized that a person has a privacy interest in an automobile, but concluded that this expectation of privacy is less than the expectation of privacy in either a home or an office. *Id.* at 190.

¶19 However, the court limited its holding to the situation where one co-occupant consents and the others do not

overtly object. The court expressly stated the "issue of whether such consent would continue to be valid as to a co-occupant if the co-occupant overtly objected to the search is not before us." *Id.* at 192.

¶20 This case is different from *Cantrell* in at least one important respect. Here, Mr. Vanhollebeke objected to the search, whereas the defendant in *Cantrell* did not. Thus, this case presents the situation like the one the *Cantrell* court expressly declined to reach. We find no Washington authority addressing this situation.

¶21 The parties do not dispute that Mr. Vanhollebeke had a privacy interest in the truck. Nor do they dispute that Mr. Casteel had common authority to consent to the search. Thus, the central question is whether Mr. Casteel's consent overrode Mr. Vanhollebeke's express objection. The State argues it did because Mr. Casteel was the truck's registered owner and, therefore, Mr. Casteel had an equal or superior interest in it.

¶22 Mr. Vanhollebeke's right to use the truck was dependent on the owner's unrevoked permission. This, we believe, limits Mr. Vanhollebeke's reasonable expectation of privacy. Some courts have utilized the law of bailments when analyzing whether an owner's consent to search over-rides a borrower's refusal. *See* 4 Wayne R. LaFave, Search and Seizure § 8.6(b) (5th ed. 2012) (consent by bailor).

¶23 An instructive case is *Hardy v. Commonwealth*, 17 Va. App. 677, 440 S.E.2d 434 (1994). There, an officer arrested the defendant for driving on a suspended license. *Id.* at 679. The defendant did not have car keys on him. *Id.* The officer determined the car belonged to the defendant's brother-in-law. *Id.* At some point, the brother-in-law appeared on the scene, admitted he owned the car, and said he had loaned it to the defendant for a few days. *Id.* The brother-in-law then consented to a search of the car. *Id.* The defendant objected. *Id.* The police searched the car and found cocaine, and the defendant was convicted. *Id.* at 679-80.

¶24 The *Hardy* court held that "[a]n owner of a motor vehicle may consent to a search of the vehicle over a bailee's objections if, at the time of the consent, the owner 'was either in possession or entitled to possession' of the vehicle." *Id.* at 681 (quoting *Anderson v. United States*, 399 F.2d 753, 756-57 (10th Cir. 1968)). The court reasoned that

> [a]n owner who allows another person to use his automobile retains ownership and the right to reclaim possession of the vehicle at will. While a bailee may have an expectation of privacy in the borrowed vehicle, that privacy interest is subordinate to the owner's right to his vehicle and right to reclaim possession of the vehicle at any time.

*Id.* The court further reasoned that when there is a bailment at will, the bailee in possession of property has an absolute duty to return it to the owner on demand. *Id.* at 681-82. Thus, when the brother-in-law arrived on the scene and gave his consent to search his vehicle, he had the right to reclaim possession. *Id.* Other courts have reached this same result "when the bailor was not in the immediate physical proximity of the vehicle at the time and instead made his wishes known to the police via some means of communication." 4 LaFave, *supra*, § 8.6(b) at 327.

¶25 Here, as bailee, Mr. Vanhollebeke had the actual right to exclude all others from the truck except for Mr. Casteel. For this reason, Mr. Vanhollebeke did not have a reasonable expectation of privacy if Mr. Casteel wanted to search his own truck or allow another person to do so.

¶26 Mr. Vanhollebeke urges us to reach a contrary result, and cites *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006). In *Randolph*, the United States Supreme Court addressed the question of whether a warrantless search of a home based on one co-occupant's consent is valid if the other co-occupant was present at the scene and "expressly refuse[d] to consent." *Id.* at 106. There, the defendant's estranged wife consented to a search of the marital residence after the defendant had "unequivocally refused" to give consent to search the house. *Id.* at 107. The

Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120.

¶27 The *Randolph* Court reasoned that "[t]he constant element in assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Id.* at 111. When a cotenant is present and objects to a visitor's entry into the home, social expectations require exclusion of the visitor. *Id.* at 114. The Court further explained that "[u]nless the people living together fall within some recognized hierarchy, like a household of parent and child or barracks housing military personnel of different grades, there is no societal understanding of superior and inferior." *Id.*

¶28 It would be inappropriate to extend *Randolph* to this situation for several reasons. First, *Randolph* recognized that different societal expectations may arise when cotenants belong to a recognized hierarchy. The fact that Mr. Casteel owned the truck and gave Mr. Vanhollebeke permission to only borrow it created a "societal understanding of superior and inferior," so that he had the "right or authority to prevail over the express wishes" of Mr. Vanhollebeke. *Id.*

¶29 Second, other courts that have considered whether to extend *Randolph* to vehicles have declined to do so because of society's lessened expectation of privacy in vehicles as compared to homes.[4] *See, e.g., Sevilla-Carcamo v. State*, 335 Ga. App. 788, 795, 783 S.E.2d 150 (2016)

---

[4] Mr. Vanhollebeke argues that we should extend *Randolph* to vehicles because article I, section 7 of the Washington Constitution provides greater privacy protections to vehicles than the Fourth Amendment. However, we will not consider whether the state constitution provides greater protection than the federal constitution in a given case when the parties do not adequately brief the six

(declining "invitation to extend . . . *Randolph* given the well-established differential treatment of residences and automobiles under the Fourth Amendment" (footnote omitted)), *cert. denied*, No. S16C1041 (Ga. Sept. 6, 2016); *State v. Copeland*, 399 S.W.3d 159, 165 (Tex. Crim. App. 2013); *United States v. Lumpkins*, 687 F.3d 1011, 1014 (8th Cir. 2012) (suggesting that because *Randolph* relied on "the 'centuries-old principle of respect for the privacy of the home,' " it does not apply to cars (quoting *Randolph*, 547 U.S. at 115)).

¶30  Finally, *Randolph*'s holding expressly drew a "fine line" and was intended to affect only those cotenants who were physically present at the threshold and expressly refused consent. *Randolph*, 547 U.S. at 121-22. "Because the Supreme Court did not extend the holding in *Randolph* to those people who were nearby or inside the home but not at the threshold, it appears the Court intended to limit its holding to the narrowly drawn parameters of a residential search." *Copeland*, 399 S.W.3d at 166.

¶31  We conclude Mr. Casteel's consent to search his truck overrode Mr. Vanhollebeke's objection. Therefore, Sergeant Garza's search did not violate Mr. Vanhollebeke's reasonable expectation of privacy and the trial court did not err in denying Mr. Vanhollebeke's CrR 3.6 motion to suppress.

¶32  Affirmed.

¶33  A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record in accordance with RCW 2.06.040.

FEARING, C.J., and KORSMO, J., concur.

Review granted at 188 Wn.2d 1001 (2017).

---

factors found in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). *See Cantrell*, 124 Wn.2d at 190 n.19.